CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
9/22/2025
LAURA A. AUSTIN, CLERK
BY s/ S. MELVIN
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

LEE BAYLESS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

Case No. 3:25-cv-00077

BRX, INC., and
FEDERAL EXPRESS CORPORATION,

COLLECTIVE AND CLASS ACTION
DEMAND FOR JURY TRIAL

Defendants.

# COMPLAINT

Plaintiff Lee Bayless, individually and on behalf of all others similarly situated, respectfully moves for judgment against Defendants BRX, Inc. and Federal Express Corporation (formerly FedEx Ground Package System, Inc.) (individually and collectively "Defendants") as follows:

## I. SUMMARY OF ACTION

1. This is an action for unpaid overtime in violation of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq., ("FLSA") and the Virginia Overtime Wage Act, VA Code § 40.1-29.2 ("VOWA"), and unpaid regular wages in violation of the Virginia Wage Payment Act, § 40.1-29 ("VWPA").

2. Plaintiff brings this action as a "hybrid" class and collective action for unpaid overtime under both federal and state law. Plaintiff brings this action as a collective action under

29 U.S.C. § 216(b), and for the state law claims only, as a class action under Federal Rule of Civil Procedure 23.

3. Plaintiff and others similarly situated are delivery drivers who were paid by Defendant BRX, Inc. to deliver packages for Defendant Federal Express Corporation (including a subsequently-merged subsidiary). Each Defendant was an employer or joint employer of Plaintiff and others similarly situated within the meaning of the FLSA, VOWA, and VWPA.

4. Plaintiff contends Defendants have violated and continue to violate the FLSA, VOWA, and VWPA by having the following policies and practices:

a. Not paying Plaintiff and similarly situated employees for all time worked at the FedEx terminal loading their trucks in the mornings prior to departing for deliveries, typically between 7:30am and 8:30am.

5. This policy and practice resulted and results in Plaintiff and similarly situated employees receiving:

a. Unpaid overtime wages and regular wages in every workweek in which these employees work more than forty hours, and

b. Unpaid regular wages in every workweek in which these employees work fewer than forty hours.

6. The policies and/or practices comprising the alleged violations are ongoing.

7. The **FLSA Collective** is made up of all non-exempt employees who were paid by Defendant BRX, Inc. to deliver packages for Defendant Federal Express Corporation, using vehicles weighing less than 10,0001 pounds, and who worked more than forty hours in at least one workweek, at any time within three years prior to this action's filing, or longer if equitable

tolling is granted, to the trial of this action (the "Relevant Period").

8. Plaintiff, on behalf of himself and all similarly situated employees, seeks unpaid overtime wages, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs, and all relief allowed by law arising out of the Defendant's FLSA violations.

9. The **Virginia Class** is made up of all members of the FLSA Collective who were paid by Defendant BRX, Inc. to deliver packages for Defendant Federal Express Corporation in Virginia at any time during the Relevant Period.

10. Plaintiff, on behalf of himself and others similarly situated, seeks unpaid regular and overtime wages, liquidated damages, triple damages, pre- and post-judgment interest, attorneys' fees and costs, and all relief allowed by law arising out of the Defendants' VOWA and VWPA violations.

11. Plaintiff reserves the right to propose amended class definitions and/or sub-classes in his motions for collective action and/or class action certification, or to add additional class claims under Rule 23 of the Federal Rule of Civil Procedure, to the extent discovery warrants such amendments or subclasses.

## II. JURISDICTION AND VENUE

12. This Court has jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b) in that the Plaintiff may bring this action in any appropriate United States District Court.

13. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the FLSA claims they form part of the same case or controversy.

14. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 and Local Rule 2(b)

since acts and omissions giving rise to this lawsuit have taken place in this division in the Western District of Virginia. Specifically, Plaintiff and similarly situated employees worked and work for Defendants in this division by making deliveries in this division.

15. Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

## III. PARTIES

16. Plaintiff Bayless is a resident of Virginia who worked for Defendants as a deliver driver from approximately July 2024 to April 17, 2025. At all times relevant, Plaintiff was an "employee" as defined in the FLSA, VOWA, and VWPA.

17. Defendant BRX, Inc. ("BRX") is a Virginia corporation (according to filings with the Virginia State Corporation Commission) with its principal office at 104 Heather Ln, Staunton, VA, 24401 - 9696, USA. At all times relevant, this Defendant is and was an "employer" of Plaintiff and all similarly situated individuals as defined by the FLSA, VOWA, and VWPA.

18. Defendant Federal Express Corporation ("FedEx") is an international organization offering shipping, transportation, and other services. It is a Delaware corporation (according to filings with the Virginia State Corporation Commission) with its principal office at 3610 Hacks Cross Rd, Memphis, TN, 38125 - 0000, USA. At all times relevant, this Defendant is and was an "employer" of Plaintiff and all similarly situated individuals as defined by the FLSA, VOWA, and VWPA.

19. Upon information and belief, prior to approximately July 2024, Defendant Federal Express Corporation contracted with Defendant BRX, Inc. and other similar entities for the "last mile" delivery of packages using its FedEx Ground Package Systems, Inc. subsidiary. According

to filings with the Virginia State Corporation Commission, as of July 12, 2024, FedEx Ground Package Systems, Inc. merged with Defendant Federal Express Corporation, with Federal Express Corporation as the surviving entity. *See also* "FedEx Announces Planned Consolidation of Operating Companies", available at https://investors.fedex.com/news-and-events/investor-news/investor-news-details/2023/FedEx-Announces-Planned-Consolidation-of-Operating-Companies/ . Last accessed June 9, 2025.

20. Defendant Federal Express Corporation is liable for its own actions and for the actions of FedEx Ground Package Systems, Inc., including those at issue in this case. According, as used in this pleading "FedEx" refers to either or both companies as applicable.

21. Each Defendant's gross annual sales made or business done is $500,000.00 or greater. Each Defendant operates in interstate commerce by, among other things, buying and/or selling goods and transacting business in multiple states, and/or by having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce in multiple states. Each Defendant's employees, including Plaintiff and similarly situated employees, were engaged in commerce and/or the production of goods for commerce.

## V. FACTUAL ALLEGATIONS

22. Defendant BRX operates a FedEx "last mile" delivery service. This entails delivering FedEx packages to customers in Virginia.

23. Plaintiff worked for Defendants as a delivery driver from approximately July 2024 to April 17, 2025. Similarly situated employees were also employed as delivery drivers.

24. During the Relevant Period, upon information and belief Defendants have had approximately 40 or more non-exempt delivery drivers who were paid by BRX to deliver

packages for FedEx ("Drivers"). These similarly situated employees had the same basic job duties and were subject to the same pay and timekeeping policies at issue in this case.

25. Plaintiff's job duties entailed making deliveries on a route in Scottsville, Palmyra, and the Charlottesville area in southern Albemarle County. Similarly situated employees made deliveries on similar routes.

26. Drivers, such as Plaintiff and other members of the proposed FLSA Collective and Virginia Class, are engaged to fulfill FedEx's delivery needs and transport goods from a FedEx terminal to FedEx customers. The terminal is in Staunton.

27. Plaintiff and other Drivers made deliveries using vehicles weighing less than 10,001 pounds.

28. Many of the packages delivered by Drivers are shipped into Virginia from out of state.

29. Plaintiff and other Drivers delivered goods to FedEx customers that were shipped from around the United States.

30. Goods that Plaintiff and other Drivers transported from the FedEx terminal originated, or were transformed into their final condition, outside of the delivery state of Virginia.

31. Plaintiff and other Drivers delivered goods to FedEx customers in the same condition as when they were shipped to the FedEx terminal.

32. Plaintiff and other Drivers worked in the transportation industry.

33. Plaintiff and other Drivers handled goods that travel interstate.

34. Plaintiff and other Drivers played a direct and necessary role in the free flow of

goods across borders.

35. Plaintiff and other Drivers picked up the packages at a FedEx terminal and delivered the packages to their final destination – local residences and businesses.

**A. Joint Employment Allegations**

36. Defendant BRX is an employer or joint employer of Plaintiff and all members of the FLSA Collective and the Virginia Class, respectively, within the meaning of the FLSA, VOWA, and VWPA.

37. Defendant FedEx is an employer or joint employer of Plaintiff and all members of the FLSA Collective and the Virginia Class, respectively, within the meaning of the FLSA, VOWA, and VWPA.

38. Defendant BRX hired Plaintiff and other Drivers to deliver packages for FedEx.

39. Plaintiff and other Drivers delivered FedEx packages exclusively.

40. Plaintiff and other Drivers picked up the packages at a terminal operated by FedEx.

41. Plaintiff and other Drivers delivered the packages by driving delivery routes that were designed by FedEx and contracted by FedEx to Defendant BRX. The FedEx designed-routes were then assigned by BRX to Plaintiff and other Drivers.

42. Plaintiff and other Drivers were required to wear a FedEx-branded uniform when making their deliveries. The uniforms had FedEx branding on the chest. The uniforms had BRX branding on the sleeve.

43. Plaintiff and other Drivers were required to drive a FedEx-branded truck when making their deliveries.

44. FedEx conducted regular inspections of the trucks used by Plaintiff and other Drivers.

45. FedEx had the power to take a vehicle out of service if it did not pass FedEx's inspection, such as if the lights were not working, the tires were worn down, or the vehicle was not functioning to FedEx's standards.

46. FedEx required Plaintiff and other Drivers to use a FedEx scanner when making their deliveries.

47. The FedEx scanner is a critical piece of equipment for Drivers and for FedEx.

48. Among other functions, the FedEx scanner allows FedEx to track Driver progress and location using GPS, track Driver working time for making deliveries, obtain customer signatures for packages, and record deliveries and delivery attempts.

49. If a delivery was late or a delivery window needed to be extended, FedEx provided Drivers with a third-party contact to coordinate with to extend the delivery window.

50. FedEx required Plaintiff and other Drivers to comply with a FedEx "walk up packages" policy. BRX communicated this policy to Plaintiff and other Drivers.

51. FedEx required Plaintiff and other Drivers to participate in random drug tests. The tests were either administered at the FedEx terminal, or FedEx would send the Drivers to a lab to do the test.

52. FedEx had the power to require BRX to fire drivers. For example, FedEx had the power to require BRX to fire a Driver that failed the drug test.

53. Defendant BRX issues the payments at issue in this case. The timekeeping and pay policies at issue are centralized and common to Plaintiff and all members of the FLSA

Collective and Virginia Class.

54. Formally or as a matter of practice, Defendants jointly determine, share, or allocate the ability to direct, control, or supervise the FLSA Collective and Virginia Class, whether by direct or indirect means. For example, upon information and belief Defendant FedEx supervised Plaintiff and other Drivers using the FedEx scanners; inspected Driver vehicles, required Drivers to take drug tests, and required Plaintiff and other Drivers to follow FedEx guidelines; while Defendant BRX communicated such guidelines to Drivers and exercised day-to-day supervision.

55. Formally or as a matter of practice, Defendants jointly determine, share, or allocate the power to, directly or indirectly, hire or fire members of the FLSA Collective and Virginia Class or modify the terms or conditions of the workers' employment. For example, Defendant BRX hired and fired Drivers, while FedEx had the power to require BRX to fire Drivers. Further, FedEx required Drivers to follow FedEx policies and procedures, such as the use of FedEx scanners, and these requirements were generally communicated to Drivers by BRX.

56. Defendants' relationship has extended through at least the full duration of Plaintiff's employment. Defendants' relationship has a high degree of permanence and a long duration. Throughout this relationship Drivers paid by Defendant BRX delivered exclusively FedEx packages.

57. Defendant FedEx controls Defendant BRX through the terms of contracts created by FedEx that set out the requirements for BRX and other companies that provide last-mile services for FedEx. Thus, Defendants' share management of the last-mile operation and Drivers'

employment.

58. Upon information and belief, the work performed by Drivers in loading their trucks is performed on premises owned or controlled by Defendant FedEx, namely the FedEx terminal. The delivery portion of the Drivers' work is performed in vehicles. Upon information and belief, the delivery vehicles are either owned by BRX, or owned by FedEx and leased by BRX from FedEx. Discovery is needed to confirm the ownership of the vehicles and any leasing arrangements.

59. Formally or as a matter of practice, Defendants jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work. For example, Defendant BRX issues the allegedly violative (under) payments at issue in this case, and handles payroll, while Defendant FedEx provides the required FedEx scanners, software, terminal, routes, and packages necessary to complete the work. Further, FedEx imposes policies on Drivers (such as guidelines for using FedEx scanners, and policies for rescheduling delivery windows), and these policies are communicated to Drivers by BRX.

60. Both Defendants' involvement in the Drivers' work was directly related to their work as Drivers.

61. Defendant BRX has centralized payroll policies and practices, such that the same pay practices at issue are common to all members of the FLSA Collective and Virginia Class.

**B. Driver Schedule and Timekeeping**

62. Defendant BRX paid Drivers on the same pay basis and Drivers were subject to

the same pay practices at issue in this action.

63. Plaintiff was regularly scheduled to work, and did work, more than 40 hours per week. Plaintiff typically worked 50-60 or more hours per week, depending on the time of year and other factors. Other Drivers worked similar hours.

64. For example, Plaintiff had a dedicated route that he typically drove five or six days per week, and often seven days per week during peak season. He typically drove Monday, Wednesday, Friday, and Saturday, plus Tuesday and/or Thursday. During peak season, he would also often drive on Sundays. Other Drivers had similar schedules.

65. On a typical day, Plaintiff and other Drivers would arrive at the FedEx terminal in Staunton at around 7:30 am or sometimes earlier. They would then load their truck with FedEx packages.

66. Plaintiff and other Drivers would clock in using their FedEx scanner. The FedEx scanner is handheld device used to record employee time, track vehicle progress and location, and record deliveries, among other tasks. Plaintiff would often clock in using the FedEx scanner upon his arrival at the terminal, because doing so would unlock his manifest – the list of packages to deliver and the order to deliver them, all provided by FedEx. Other Drivers would typically do the same as Plaintiff, clocking in on the FedEx scanner upon arrival to unlock their manifests. This process is called logging in. Occasionally Drivers might log in later using the FedEx scanner, before departing for their deliveries, but the general practice is to log in upon arrival at the terminal. At the end of the day, Drivers would log out on the FedEx Scanner.

67. Defendants did not begin tracking Plaintiff's and other Drivers' time for pay purposes until 8:30 am, although they were generally suffered, permitted, and/or required to

perform work loading their trucks beginning at around 7:30 am or earlier.

68. Plaintiff would typically clock in using the FedEx scanner at 7:30 am when he arrived and began loading his truck, but he and other Drivers were told they would not start being paid until 8:30 am.

69. Defendant BRX used a timekeeping application called the Beans App, for keeping track of Plaintiff's and other Drivers' time. This time-tracking application was used to calculate their hourly pay.

70. Plaintiff and other Drivers were not permitted to clock in on the Beans App until 8:30 am, even though Defendants suffered and permitted them to start work loading their trucks prior to that (typically starting around 7:30am).

71. If Plaintiff and other Drivers attempted to log their time on the Beans App prior to 8:30am, the application would not permit them to log in record that time prior to 8:30am.

72. Further, Defendants did not provide Plaintiff and other Drivers with a process or procedure to be paid for their time worked prior to 8:30 am. Defendant BRX did not pay Drivers for time worked prior to 8:30am.

73. Plaintiff and other Drivers would arrive and began working such as loading their trucks prior to 8:30am in order to have their trucks loaded so that they could depart the terminal for their routes in a timely manner, that is in the window between 9:30am and 10:15am.

74. Once Plaintiff and the other Drivers completed loading their trucks with FedEx packages, they would depart the terminal and begin driving their delivery routes. This was typically between 9:30 am and 10:15 am. Defendant FedEx would hold Drivers at the terminal until as late as 10:15 am so that FedEx could finish sorting the packages for loading onto the

trucks.

75. Plaintiff and other Drivers were required to depart for their delivery routes by 10:15am. Plaintiff and other Drivers would arrive at the terminal and began working such as loading their trucks prior to 8:30am in order to have their trucks loaded and ready to depart by 10:15am.

76. For Plaintiff, who drove a route in the Scottsville, Palmyra, and the Charlottesville area in southern Albemarle County, after driving in from the terminal in Staunton, his deliveries would typically begin between around 10:15 am and 11:00 am. Typically he would start his deliveries around 11:00am.

77. Plaintiff typically spent roughly seven to nine hours driving his route, concluding approximately between 6:00 pm and 8:00 pm or later.

78. Plaintiff and other Drivers worked this schedule on each day worked, typically five to six days weekly to as many as seven days weekly during peak season.

79. During peak season in November and December, Plaintiff and other Drivers were typically required to work six or seven days per week. The daily hours worked and number of stops also increased during this time of the year.

80. Other Drivers were scheduled the same or similarly as Plaintiff and worked similar hours to Plaintiff.

81. Plaintiff and similarly situated employees regularly worked in excess of 40 hours per workweek in multiple workweeks and were subject to the policies and practices described herein that deprived them of overtime and regular wages.

**A. The Unpaid Loading Time Policy**

82. At all times relevant, Defendants have had a policy and practice of not paying Plaintiff and similarly situated employees for all time worked at the FedEx terminal in the mornings prior to departing for deliveries (the "Unpaid Loading Time Policy"). Specifically, as described above, this policy involved Defendants suffering, permitting and/or requiring Plaintiff and similarly situated employees to work at the FedEx terminal loading their trucks for approximately an hour (beginning around 7:30am) but not permitting them to clock in on the Beans App and begin receiving their hourly pay until 8:30am.

83. Upon information and belief, this policy was carried out by Defendant BRX as the payments at issue were issued with paystubs bearing BRX's name. As a joint employer, Defendant FedEx is jointly liable for the policy.

84. Defendants' time records and pay records, the observations of Drivers and their supervisors at the terminal, and security camera footage, among other evidence, show this policy and practice with respect to employees who fit the above definition.

85. This policy and practice resulted and results in Plaintiff and similarly situated employees receiving:

a. Unpaid overtime wages and regular wages in every workweek in which these employees work more than forty hours, and

b. Unpaid regular wages in every workweek in which these employees work fewer than forty hours.

86. For example, for the one-week pay period November 10, 2024 to November 16, 2024:

a. Plaintiff's hourly rate during this week was $21.25;

b. Plaintiff worked at least 47.32 on-the-clock hours this workweek, including at least 7.32 on-the-clock overtime hours.

c. In addition to these hours, Plaintiff worked approximately 5 hours off-the-clock this workweek. These hours were worked at the FedEx terminal loading his truck between approximately 7:30am when he arrived and 8:30am when he was permitted to clock in on the Beans App and begin receiving his pay.

d. Due to the Unload Loading Time Policy described herein, Plaintiff did not receive any compensation for the additional approximately 5 hours of pre-8:30am work this week.

e. Consequently, Plaintiff was underpaid by approximately 5 hours of overtime compensation, or 5 hours of regular wage straight time compensation plus 5 hours of overtime premiums.

87. For an additional example, for the one-week pay period September 8, 2024 to September 14, 2024:

a. Plaintiff's hourly rate was $21.25;

b. Plaintiff worked at least 46.07 on-the-clock hours this workweek, including at least 6.07 on-the-clock overtime hours.

c. In addition to these hours, Plaintiff worked approximately 5 hours off-the-clock this workweek. These hours were worked at the FedEx terminal loading his truck between approximately 7:30am when he arrived and 8:30am when he was permitted to clock in on the Beans App and begin receiving his pay.

d. Due to the Unload Loading Time Policy described herein, Plaintiff did not

receive any compensation for the additional approximately 5 hours of pre-8:30am work this week.

e. Consequently, Plaintiff was underpaid by approximately 5 hours of overtime compensation, or 5 hours of regular wage straight time compensation plus 5 hours of overtime premiums.

88. For an additional example, for the one-week pay period August 25, 2024 to August 31, 2024:

a. Plaintiff's hourly rate was $21.25.

b. Plaintiff worked at least 57.43 on-the-clock hours this workweek, including at least 17.43 on-the-clock overtime hours.

c. In addition to these hours, Plaintiff worked approximately 5-6 hours off-the-clock this workweek. These hours were worked at the FedEx terminal loading his truck between approximately 7:30am when he arrived and 8:30am when he was permitted to clock in on the Beans App and begin receiving his pay.

d. Due to the Unload Loading Time Policy described herein, Plaintiff did not receive any compensation for the additional approximately 5-6 hours of pre-8:30am work this week.

e. Consequently, Plaintiff was underpaid by approximately 5-6 hours of overtime compensation, or 5-6 hours of regular wage straight time compensation plus 5-6 hours of overtime premiums.

89. For an additional example, for the one-week pay period September 1, 2024 to September 7, 2024:

a. Plaintiff's hourly rate was $21.25.

b. Plaintiff worked at least 36.55 on-the-clock hours this workweek, including 0 on-the-clock overtime hours, and upon information and belief only worked 4 days this work week due to Labor Day on 9/2/2024.

c. In addition to these hours, Plaintiff worked approximately 4 hours off-the-clock this workweek. These hours were worked at the FedEx terminal loading his truck between approximately 7:30am when he arrived and 8:30am when he was permitted to clock in on the Beans App and begin receiving his pay.

d. Due to the Unload Loading Time Policy described herein, Plaintiff did not receive any compensation for the additional approximately 4 hours of pre-8:30am work this week.

e. Consequently, Plaintiff was underpaid by (i) approximately 3.45 hours of regular wage straight time compensation, plus (ii) 0.55 hours of overtime compensation, or 0.55 hours of regular wage straight time compensation plus 0.55 hours of overtime premiums.

90. Other Drivers worked similar hours and like Plaintiff were subject to Defendants' Unpaid Loading Time Policy, and similarly incurred unpaid overtime and regular wages.

91. Due to Defendants' Unpaid Loading Time Policy, employees similarly situated to Plaintiff likewise were not paid overtime wages for time worked in excess of 40 hours in a workweek and not paid regular wages for the working time at issue.

**C. Defendants' Practices Were Willful and Knowing**

92. Defendants' policies and/or practices comprising the alleged violations are

ongoing.

93. As a joint employer, Defendant FedEx is jointly liable with BRX for the willful and knowing nature of the pay policies at issue in this case.

94. Defendants knew or should have known that the Unpaid Loading Time Policy was not permissible under the FLSA, VOWA, and VWPA.

95. Defendants knew or should have known that Plaintiff and similarly situated employees were working in the mornings before 8:30am without pay because (a) Drivers' supervisors, including oftentimes Defendant BRX's owners, would be at the terminal in the morning and saw the Drivers working off the clock without pay before 8:30am; (b) the FedEx scanners show unpaid hours (when Drivers logged in on the scanners upon arrival at the terminal, before loading their trucks, and before later clocking in for pay purposes on the Beans App); (c) security camera footage at the FedEx terminal will show Drivers arriving and loading their trucks prior to 8:30am when they could clock in on the Beans App and began receiving their pay, (d) Plaintiff frequently discussed the fact that he and others worked at the terminal before 8:30am without being paid with his supervisors; among other evidence.

96. For example, Defendant BRX's floor supervisors Rebecca Huffman and Tony (last name unknown) were regularly at the FedEx terminal and saw Plaintiff and other Drivers working loading their trucks in the morning before they were allowed to clock in on the Beans App and begin receiving their pay. In addition, Defendant BRX's owners (Mike Yancey and Jeff Ramsey) were also often at the terminal in the morning and saw Plaintiff and other Drivers working loading their trucks before they were allowed to clock in on the Beans App and begin receiving their pay.

97. Plaintiff and similarly situated employees were not employed in any bona fide executive, administrative, or professional capacity.

98. Based on the nature of Plaintiff's and similarly situated employees' job duties and their pay basis, there is no FLSA or VOWA exemption that applies to preclude them from being paid one and one-half times their regular rate of pay for all hours worked in excess of 40 per week.

99. Defendants willfully violated the FLSA, VOWA, and VWPA through the Unpaid Loading Time Policy.

100. Defendants had no good faith basis for the policies and practices described herein.

101. Defendants knowingly failed to pay full regular wages required by the VWPA within the meaning of Va. Code § 40.1-29(J) and (K).

102. Defendants suffered and/or permitted and/or required Plaintiff and similarly situated employees to work more than 40 hours per week without full overtime compensation of 1.5 times their regular rates.

103. Defendants knew or should have known that their policies and practices described herein violated the overtime provisions of the FLSA and VOWA and the wage payment provisions of the VWPA.

104. At all relevant times Defendants intended to deprive Plaintiff and similarly situated employees of the overtime pay and regular pay they were entitled to under the FLSA, VOWA, and VWPA, or acted with reckless disregard for these employees' rights under the FLSA, VOWA, and VWPA.

## V. FLSA COLLECTIVE ACTION ALLEGATIONS

105. Plaintiff files this statutorily authorized collective action pursuant to 29 U.S.C. § 216(b) as Representative Plaintiff on behalf of himself and the FLSA Collective.

106. Defendants employ, and have employed, multiple persons who fit the above definition who due to the policies and practices described herein were deprived of the full required overtime pay for all time they worked in excess of 40 hours each week.

107. These employees perform, and have performed, work which entitles them to payment of overtime compensation which they have not received.

108. Within the past three years, Plaintiff and similarly situated employees were subject to a common plan or policy of Defendants to avoid paying full overtime wages through the Unpaid Loading Time Policy described herein.

109. Defendants' time records and pay records, the observations of Drivers and their supervisors at the terminal, and security camera footage, among other evidence, show this policy and practice with respect to employees who fit the above definition.

110. Defendants compensated, and continues to compensate, those similarly situated to Plaintiff on a uniform compensation basis common to Plaintiff and other persons performing similar job functions.

111. Defendant BRX's pay operations are centrally managed, and employees meeting the above definition of the FLSA Collective are subject to common payroll practices.

112. Defendants' policies described herein amounted to a willful or reckless disregard of the employees' rights under the FLSA.

113. Defendants had no good faith basis to believe that the Unpaid Loading Time Policy was somehow allowable under the FLSA.

114. Defendants' willful disregard of the overtime wage laws described herein entitles Plaintiff and similarly situated employees to the application of the three (3) year limitations period.

115. Plaintiff and those similarly situated to Plaintiff are not exempt from the coverage of the FLSA.

116. At all relevant times, Plaintiff and other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA.

117. Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the Collective. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of Court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

118. Plaintiff hereby files his Written Consent to Become Party to Collective Action Under 29 U.S.C. § 216 and State Laws, attached as Exhibit 1.

## VI. VIRGINIA CLASS ACTION ALLEGATIONS

119. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Virginia Class.

120. Numerosity: Upon information and belief, the Virginia Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that during the relevant time period, Defendants have employed over 40 people who satisfy the definition of the proposed Virginia Class.

121. Typicality: Plaintiff's claims are typical of the Virginia Class. The claims are based on the corporate policies and practices comprising the Unpaid Loading Time Policy. These are centralized pay policies and practices applicable to all members of the Virginia Class.

122. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

123. Adequacy: Plaintiff will fairly and adequately protect the interests of the Virginia Class and has retained counsel experienced in complex wage and hour class and collective action litigation.

124. Commonality: Common questions of law and fact exist to all members of the Virginia Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether Defendants' Unpaid Loading Time Policy violates the VOWA.

b. Whether Defendants' Unpaid Loading Time Policy violates the VWPA.

c. Whether each Defendant is/was an "employer" of Plaintiff and the Virginia Class within the meaning of VOWA and VWPA.

d. Whether Plaintiff and the Virginia Class are/were "employees" of each Defendant within the meaning of VOWA and VWPA.

e. The proper measure of damages sustained by Plaintiff and the Virginia Class.

f. Whether Defendants' allegedly violative policies and practices were

willful and/or knowing within the meaning of Va. Code § 40.1-29(J) and (K).

125. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Virginia Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

126. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Virginia Class predominate over any questions only affecting individual members of the Virginia Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the members of the Virginia Class the full overtime wages and regular wages to which they are entitled under Virginia law. The damages suffered by the individual Virginia Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

127. Plaintiff intends to send notice to all members of the Virginia Class to the extent required by Rule 23. The names and addresses of the members of the Rule 23 Class are available from Defendants.

128. Plaintiff reserves the right to propose amended class definitions and/or sub-classes in his motions for collective action and class action certification.

129. Defendants employ, and have employed, multiple persons who fit the Virginia Class definition who due to Defendants' policies and practices described herein were deprived of the full required overtime pay and regular pay for all time they worked each week. These employees perform, and have performed, work which entitles them to payment of overtime compensation and regular compensation which they have not received.

130. Within the past three years, Plaintiff and similarly situated employees were subject to a common plans or policies of Defendants to avoid paying full overtime and regular wages, through the Unpaid Loading Time Policy described herein. Defendants' time records and pay records, among other evidence, show each policy and practice with respect to employees who fit the above definition.

131. Defendant BRX's pay operations are centrally managed, and employees meeting the above definition are subject to common payroll practices.

132. Defendants' policies described herein amounted to a willful or reckless disregard of the employees' rights under the VOWA and VWPA.

133. Defendants had no good faith basis to believe that the policies and practices described herein were somehow allowable under the VOWA and VWPA.

134. Defendants' policies described herein amounted to a knowing failure to pay wages as required by the VOWA and VWPA.

## VI. CLAIMS

### COUNT 1: VIOLATIONS OF FAIR LABOR STANDARDS ACT
### (Overtime Violations)
### (On Behalf of Plaintiff and FLSA Collective)

135. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully

set forth herein.

136. At all times relevant herein, each Defendant has been, and continues to be, an "employer," and Plaintiff and each similarly situated employee has been, or continues to be, an "employee" within the meaning of 29 U.S.C. §§ 203(d) and (e).

137. The FLSA requires covered employers, such as Defendants, to compensate all non-exempt employees at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours per week. 29 U.S.C. § 207. As such, each member of the FLSA Collective is entitled to overtime compensation at one and one-half times their regular rate of pay for work performed in excess of 40 hours per week.

138. Through the Unpaid Loading Time Policy, Defendants have violated, and continue to violate the FLSA when members of the FLSA Collective work more than 40 hours per week.

139. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

140. Plaintiff seeks damages for himself and all others similarly situated in the amount of Plaintiff's and each similarly situated employee's unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the FLSA, and all other such legal and equitable relief as the Court deems just and proper.

**COUNT 2: VIOLATIONS OF VIRGINIA OVERTIME WAGE ACT**
**(Overtime Violations)**
**(On Behalf of Plaintiff and Virginia Class)**

141. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully

set forth herein.

142. Plaintiff brings this VOWA count as a class action under Federal Rule of Civil Procedure 23, on behalf of himself and the Virginia Class. In the alternative, Plaintiff brings this VOWA count as a collective action under the VOWA, Va. Code § 40.1-29.2, and Va. Code § 40.29(J), on behalf of himself and the Virginia Class.

143. At all times relevant, the VOWA has required Defendants to pay the Virginia Class overtime compensation at one and one-half their regular rates for all hours worked in excess of 40 per week.

144. Since the 2022 amendments to VOWA, the VOWA has mirrored the requirements of the FLSA: "Any employer that violates the overtime pay requirements of the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., as amended, and any regulations, guidance, or rules adopted pursuant to the overtime pay provisions of such federal act or any related governing case law shall be liable to the employee for the applicable remedies, damages, or other relief available under the federal Fair Labor Standards Act in an action brought pursuant to the process in subsection J of § 40.1-29.…" Va. Code § 40.1-29.2.

145. Through the Unpaid Loading Time Policy, Defendants have violated, and continue to violate, the VOWA when members of the Virginia Class work more than 40 hours per week.

146. Plaintiff seeks damages in the amount of unpaid overtime wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, all other relief available under the VOWA, and all other such legal and equitable relief as the Court deems just and proper.

**COUNT 3: VIOLATIONS OF VIRGINIA WAGE PAYMENT ACT**
**(Regular Wage Violations)**
**(On Behalf of Plaintiff and Virginia Class)**

147. Plaintiff alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

148. Plaintiff brings this VWPA count as a class action under Federal Rule of Civil Procedure 23, on behalf of himself and the Virginia Class. In the alternative, Plaintiff brings this VWPA count as a collective action under the VWPA, Va. Code § 40.1-29 (J), on behalf of himself and the Virginia Class.

149. This is a claim for unpaid regular hourly wages due to the Unpaid Loading Time Policy described herein, for unpaid time in the gap between non-overtime and overtime hours—that is, hours worked that were uncompensated but were not overtime hours or otherwise do not bring Plaintiff's and similarly situated employees' total hours for the workweek above 40 hours. For example, if 32 hours were compensated and 5 hours were not, this claim seeks recovery of the regular hourly wages for the 5 uncompensated hours.

150. At all times relevant to this action, Plaintiff and similarly situated employees were employed by Defendants within the meaning of the VWPA, Va. Code § 40.1-29.

151. Plaintiff and similarly situated employees had a right to be paid their regular hourly rates for all time worked for Defendants. These wages were earned and due on each of the applicable pay periods.

152. Through the Unpaid Loading Time Policy described herein, Defendants did not pay Plaintiff and similar situated employees their regular hourly rates (or any compensation) for all time worked loading their trucks in the mornings at the terminal before departing for

deliveries, typically between 7:30am and 8:30am.

153. The VWPA provides, inter alia, that an employer must pay wages due on regular pay periods and "Upon termination of employment an employee shall be paid all wages or salaries due him for work performed prior thereto; such payment shall be made on or before the date on which he would have been paid for such work had his employment not been terminated." Va. Code § 40.1-29(A).

154. The VWPA further provides, inter alia, that "No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee." Va. Code § 40.1-29(C).

155. The VWPA further provides that "No employer shall require any employee, except executive personnel, to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment or the continuance therein, except as otherwise provided by law." Va. Code § 40.1-29(D).

156. Through the Unpaid Loading Time Policy, Defendants failed to pay Plaintiff and similarly situated employees their regular hourly rates for compensable working time in the mornings as described herein. In so failing, Defendants committed an unlawful deduction from wages, in violation of the VWPA, Va. Code § 40.1-29(C).

157. By failing to pay Plaintiff and similarly situated employees all wages due for work performed in accordance with regular pay periods, Defendants violated Va. Code § 40.1-29(A).

158. If Defendants required Plaintiff and similarly situated employees to sign

documentation authorizing the Unpaid Loading Time Policy as a condition of employment or continuance therein, Defendants violated Va. Code § 40.1-29(D).

159. By failing to pay Plaintiff and similarly situated employees all regular wages due, Defendants committed an unlawful failure to pay wages and deduction from wages in violation of the VWPA, Va. Code § 40.1-29(A) and (C).

160. Defendants' conduct as described herein constitutes that each Defendant "knowingly failed to pay wages to an employee in accordance with [the VWPA]" within the meaning of Va. Code § 40.1-29(J) and (K).

161. Plaintiff for himself and the Virginia Class seeks damages in the amount of unpaid and withheld wages, an equal amount as liquidated damages, interest, all costs and attorneys' fees incurred in investigating and prosecuting this claim, as well as "an amount equal to triple the amount of wages due and reasonable attorney fees and costs" pursuant to Va. Code §§ 40.1-29.2(F) and 40.1-29(J), all other relief available under the VWPA, and all other such legal and equitable relief as the Court deems just and proper.

**FLSA Collective Relief Requested**

Wherefore, Plaintiff on behalf of himself and all members of the FLSA Collective requests the following Relief against Defendants:

A. An order conditionally certifying a group or groups of putative collective action members and approving a notice to be sent to all such members, notifying them of this representational lawsuit and their ability to file a written consent to join in this action without threat or fear of reprisal;

B. Judgment that Plaintiff and all similarly situated employees were non-exempt employees

entitled to protection under the FLSA;

C. Judgment against Defendants for violations of the overtime wage provisions of the FLSA;

D. Judgment that Defendants' violations as described above were willful;

E. Money damages for all unpaid overtime wages;

F. Liquidated damages in an amount equal to all unpaid overtime wages owed to Plaintiff and similarly situated employees;

G. Pre-judgment and post-judgment interest;

H. Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

I. Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime or minimum wages under the FLSA or other applicable law; and

J. Any and all further relief permissible by law.

**Virginia Class Relief Requested**

Wherefore, Plaintiff on behalf of himself and all members of the Virginia Class requests the following Relief against Defendants:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Designation of Plaintiff as representative of the Virginia Class and counsel of record as class counsel;

C. Unpaid overtime and regular wages, liquidated and/or triple damages, injunctive relief,

and attorney's fees and costs pursuant to Virginia law;

D. Judgment that Plaintiff and all similarly situated employees were non-exempt employees entitled to protection under the VOWA and VWPA;

E. Judgment against Defendants for violations of the overtime wage requirements of the VOWA and the wage payment requirements of the VWPA;

F. Judgment that Defendants' violations as described above were willful;

G. Judgment that each Defendant "knowingly failed to pay wages to an employee in accordance with [the VWPA]" within the meaning of Va. Code § 40.1-29(J)&(K) as to Plaintiff and all similarly situated employees.

H. Money damages for all unpaid overtime wages and regular wages;

I. Liquidated damages in an amount equal to all unpaid overtime and regular wages owed to Plaintiff and similarly situated employees, and/or triple damages to the full extent allowed by law;

J. An amount equal to "triple the amount of wages due and reasonable attorney fees and costs" pursuant to Va. Code §§ 40.1-29(J)&(K).

K. Pre-judgment and post-judgment interest;

L. Reasonable attorneys' fees and costs including expert fees expended in the prosecution of this case and the investigation that preceded it;

M. Leave to amend to bring additional claims and/or parties, including but not limited to additional claims for retaliation and/or unpaid overtime, regular wages, or minimum wages under the VOWA, VWPA, or other applicable law; and

N. Any and all further relief permissible by law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all claims and issues so triable.

Respectfully submitted,

LEE BAYLESS,
individually and on behalf of all others similarly situated,
By Counsel

Dated: September 22, 2025

/s/Timothy Coffield
Timothy Coffield (VSB 83430)
COFFIELD PLC
106-F Melbourne Park Circle
Charlottesville, VA 22901
p: (434) 218-3133 f: (434) 321-1636
tc@coffieldlaw.com

Counsel for Plaintiff